JS-6



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FELICIA BRASHEARS, | ) | Case No. CV 12-6760 FMO (JCGx) |
| Plaintiff, | ) | |
| | ) | **ORDER DISMISSING FDCPA CLAIM AND** |
| v. | ) | **REMANDING REMAINING CLAIMS TO** |
| | ) | **STATE COURT** |
| BANK OF AMERICA HOME LOANS, <u>et</u> <u>al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Having reviewed and considered all the briefing filed with respect to defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"), the court concludes that oral argument is not necessary to resolve the Motion.  <u>See</u> Fed. R. Civ. P. 78.

## INTRODUCTION

On June 1, 2012, <u>pro se</u> plaintiff Felicia Brashears ("plaintiff") filed a complaint in the Los Angeles County Superior Court against defendants Bank of America, N.A. (erroneously sued as Bank of America Home Loans and Bank of America Corporation), Countrywide Home Loans, Countrywide Financial Corp., The Bank of New York Mellon, ReconTrust Company, N.A. (erroneously sued as ReconTrust Company and ReconTrust, N.A.), CWALT, Inc., and Mortgage Electronic Registration Systems, Inc. (erroneously sued as Mortgage Electronic Registration) (collectively, "defendants"), alleging violations of federal and state law in connection with the

1    issuance of a mortgage loan and the subsequent foreclosure of plaintiff's property in Palmdale,

2    California.  On August 6, 2012, defendants removed the case to federal court pursuant to 28

3    U.S.C. §§ 1331, 1441 and 1446.  (See Notice of Removal ("NOR") at 1).

4          On January 25, 2013, the court granted defendants' motion to dismiss and dismissed

5    plaintiff's Complaint with leave to amend.  (See Court's Order of January 25, 2013, at 1).  On

6    February 5, 2013, plaintiff filed her First Amended Complaint ("FAC"), alleging: (1) slander of title;

7    (2) violation of California Penal Code § 470(b), (d); (3) violation of the California Civil Code §§

8    2923.55, 2924.12 and 2924.17; (4) intentional and negligent misrepresentation; (5) fraud, deceit

9    and concealment; (6) violation of California Civil Code § 1572; (7) violation of the Fair Debt

10   Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g; (10) quiet title; (11) violation of California

11   Business and Professions Code § 17200; (12) violation of the Unruh Civil Rights Act, California

12   Civil Code § 51; and (13) declaratory relief.

13         On February 21, 2013, defendants filed the instant Motion.  Plaintiff filed her Opposition to

14   Motion to Dismiss ("Opp.") on March 25, 2013, and defendants filed their Reply in Support of

15   Motion to Dismiss ("Reply") on April 1, 2013.

16                                   **BACKGROUND**

17         On July 13, 2004, plaintiff obtained a loan from defendant America's Wholesale Lender

18   ("AWL"), d/b/a Countrywide Bank, N.A. ("Countrywide") for $302,385.  (See RJN, Exh A, DOT;

19   FAC at ¶ 34).[1]  The loan was secured by a DOT on the real property located at 37016 Sabal

20

21         [1]  The relevant facts are based on the FAC and defendants' Request for Judicial Notice in

22   Support of Motion to Dismiss Plaintiff's Complaint, filed on December 5, 2012 ("RJN"). Defendants
     request that the court to take judicial notice of the following documents:  (1) the Deed of Trust

23   ("DOT") recorded in the Los Angeles County Recorder's Office on July 20, 2004, as Document
     Number 041843988 ("Exh. A"); (2) a Substitution of Trustee and Assignment of Deed of Trust

24   recorded in the Los Angeles County Recorder's Office on December 7, 2009, as Document
     Number 20091847019 ("Exh. B"); (3) a Notice of Default and Election to Sell, recorded in the Los

25   Angeles County Recorder's Office on August 19, 2011, as Document Number 20111124629 ("Exh.
     C"); (4) a Notice of Trustee's Sale recorded in the Los Angeles County Recorder's Office on

26   November 23, 2011, as Document Number 20111594870 ("Exh. D"); and (5) a Trustee's Deed
     Upon Sale recorded in the Los Angeles County Recorder's Office on April 24, 2012, as Document

27   Number 20120601156 ("Exh. E").  (See RJN).

28         "A court may take judicial notice of matters of public record without converting a motion to

1    Avenue in Palmdale, California (the "Property").  (See DOT at 2-4).  The DOT names plaintiff as

2    the borrower, AWL as the lender, CTC Real Estate Services ("CTC") as the trustee, and Mortgage

3    Electronic Registration Systems, Inc. ("MERS") as the beneficiary.  (See id. at 2-3).

4         On November 5, 2009, defendant ReconTrust Company, N.A. ("ReconTrust") was

5    substituted in as trustee for CTC and MERS assigned its interests under the DOT to The Bank of

6    New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders CWABS, Inc.,

7    Asset-Backed Certificates, Series 2004-7 ("BNYM").  (See RJN, Exh. B).

8         On August 17, 2011, ReconTrust filed a Notice of Default and Election to Sell Under Deed

9    of Trust with the Los Angeles County Recorder's Office due to plaintiff's failure to make payments

10   on her loan.  (See RJN, Exh. C at 3).  On November 21, 2011, ReconTrust filed a Notice of

11   Trustee's Sale with the Los Angeles County Recorder's Office, listing the total amount of the

12   unpaid balance, plus interest and costs, at $339,935.02.  (See id. at Exh. D).  On April 16, 2012,

13   BNYM purchased the Property at the trustee's sale for $158,400.  (See id. at Exh. E).

14        Plaintiff alleges that defendants "unlawfully sold, assigned and/or transferred their

15   ownership and security interest in a Promissory Note and Deed of Trust related to the Property,

16   and, thus, do not have lawful ownership or a security interest in Plaintiff'[s] Home[.]"  (FAC at ¶ 2).

17   According to plaintiff, because MERS was acting as a "Nominee Beneficiary," it was not the true

18   beneficiary and, therefore, the DOT is null.  (See id. at ¶ 35).  Plaintiff further alleges that MERS'

19   assignment of its interests under the DOT was fraudulent because the assignment was "robo-

20   signed" by T. Sevillano, Assistant Secretary for MERS.  (See id. at ¶¶ 60, 64).

21        With respect to the mortgage loan, plaintiff alleges that defendants entered into a

22   "fraudulent scheme" to give her a loan that defendants knew she could not afford.  (FAC at ¶ 48).

23

24   _____

25   dismiss into a motion for summary judgment."  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th
     Cir. 2001) (internal quotation marks and citation omitted).  Having reviewed the documents
26   attached to the RJN, the court will take judicial notice of the subject documents.  See Dunfee v.
     Truman Capital Advisors, LP, 2013 WL 1285152, *2 n. 2 (S.D. Cal. 2013) (taking judicial notice
27   of deed of trust, notice of default, notice of trustee's sale and a trustee's deed upon sale);
     Velasquez v. Countrywide Home Loans, Inc., 2012 WL 2368285, *2 (N.D. Cal. 2012) (same);
28   Gomez v. Wells Fargo Home Mortg., 2011 WL 5834949, *1 n. 2 (N.D. Cal. 2011) (same).

1    According to plaintiff, "Countrywide, on [its] own initiative, falsified Plaintiff's loan application

2    making plaintiff's monthly income in excess of the true amount [s]he stated." (Id. at ¶ 40).

3    **STANDARD OF REVIEW**

4        A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer

5    "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly

6    (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 550 U.S.

7    662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A

8    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

9    the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 550 U.S.

10    at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc.,

11    590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and

12    conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly,

13    550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 550 U.S. 662 at 678, 129 S.Ct. at 1949; see also Cholla

14    Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005)

15    ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if

16    those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required

17    to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

18    unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are

19    not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is

20    and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200

21    (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555,

22    127 S.Ct. at 1964.

23        In considering whether to dismiss a complaint, the court must accept the allegations of the

24    complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266,

25    268, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading

26    party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421,

27    89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Pro se

28    pleadings are "to be liberally construed" and are held to a less stringent standard than those

4

1   drafted by a lawyer.  Erickson, 551 U.S. at 94, 127 S.Ct. at 2200; Haines v. Kerner, 404 U.S. 519,

2   520, 92 S.Ct. 594, 596 (1972) (per curiam); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir.

3   2010) ("Iqbal incorporated the Twombly pleading standard and Twombly did not alter courts'

4   treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when

5   evaluating them under Iqbal.") (italics in original).  Nevertheless, dismissal for failure to state a

6   claim can be warranted based on either a lack of a cognizable legal theory or the absence of

7   factual support for a cognizable legal theory.  See Mendiondo v. Centinela Hosp. Med. Ctr., 521

8   F.3d 1097, 1104 (9th Cir. 2008).  A complaint may also be dismissed for failure to state a claim

9   if it discloses some fact or complete defense that will necessarily defeat the claim.  Franklin v.

10  Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

11                                  **DISCUSSION**

12  I.   PLAINTIFF'S FDCPA CLAIM.

13        The Fair Debt Collection Practices Act ("FDCPA") prohibits "debt collectors" from engaging

14  in various unlawful debt collection practices.  See 15 U.S.C. § 1692(e).  A "debt" is defined as "any

15  obligation or alleged obligation of a consumer to pay money arising out of a transaction in which

16  the money, property, insurance, or services which are the subject of the transaction are primarily

17  for personal, family, or household purposes, whether or not such obligation has been reduced to

18  judgment."  15 U.S.C. § 1692a(5).  A "debt collector" is defined as "any person who uses any

19  instrumentality of interstate commerce or the mails in any business the principal purpose of which

20  is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly,

21  debts owed or due or asserted to be owed or due another."  Id. at § 1692a(6).

22        Plaintiff alleges that, on or about October 3, 2011, she sent a "Debt Validation letter"

23  regarding her loan to Bank of America, Countrywide and ReconTrust.  (See FAC at ¶¶ 87, 199).

24  Plaintiff alleges that although she "properly served a Debt Validation letter upon Defendants [they]

25

26

27

28

5

1   have failed to respond or address Plaintiff's request."[2]   (See id. at ¶ 199).   In addition, plaintiff

2   claims that defendants violated the FDCPA by not suspending collection activities.   (See id.).

3        Defendants assert that the FDCPA does not apply because they are not "debt collectors"

4   within the meaning of the FDCPA and because the FDCPA does not apply to plaintiff's loan.   (See

5   Motion at 11).   The court agrees.

6        As an initial matter, although plaintiff alleges a cause of action under the FDCPA against

7   all defendants, (see FAC at ¶¶ 197-99), she references only Bank of America as a debt collector

8   in her FDCPA claim.   (See id. at ¶¶ 185-86) ("Bank of America Defendants are debt collectors

9   within the meaning [of the] FDCPA" that "violated the FDCPA . . . by collection of 'improper fees'

10   that were not authorized by contract, and/or deceptive representations as to the amount of debt

11   owed on the mortgage and communicating credit information that it knew or should have known

12   was false.").   In any event, having reviewed the allegations in the FAC, the court is persuaded that

13   plaintiff cannot state a claim under the FDCPA.

14        First, plaintiff has not established that any of the defendants constitute a "debt collector"

15   within the meaning of the FDCPA.   (See, generally, FAC).   While the Ninth Circuit has not

16   specifically addressed whether mortgagees and their assignees are "debt collectors" under the

17   FDCPA,[3] courts within this Circuit have recognized that "a debt collector does not include the

18

19      [2]   Pursuant to 15 U.S.C. § 1692g(a), "[w]ithin five days after the initial communication with a

20   consumer in connection with the collection of any debt", a debt collector must send the consumer
    written notice containing information regarding the debt.   This written notice, from the debt

21   collector to the consumer, has been referred to as a "debt validation letter."   See, e.g., Renteria
    v. Nationwide Credit, Inc., 2009 WL 2754988, *1 (S.D. Cal. 2009) (noting that the plaintiff, in his

22   complaint, alleged that defendant did not send him a "debt validation letter as required by 15
    U.S.C. § 1692g(a)").

23

24      [3]   The Fifth Circuit, in Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.), mod. on other
    grounds, 761 F.2d 237 (1985), has addressed whether mortgage servicing companies and their

25   assignees are "debt collectors" within the meaning of the FDCPA.   There, the plaintiffs had entered
    into an earnest money contract for the purchase of a home, which was financed by a loan from

26   a mortgage company.   Id. at 1201-02.   The mortgage company then sold the loan to another
    mortgage association.   Id. at 1202.   For reasons unrelated to the assignment of the loan, the

27   plaintiffs gave notice that they were rescinding the contract.   Id.   They subsequently filed suit
    alleging, among other things, that the mortgage company that had sold their loan was liable for

28   breach of contract, fraud, and negligence, and that the mortgage association was liable under an

1    consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the

2    debt was not in default at the time it was assigned."  Wise v. Wells Fargo Bank, N.A., 850

3    F.Supp.2d 1047, 1053 (C.D. Cal. 2012) ("The FDCPA specifically excludes creditors collecting

4    their own consumer debts . . . .  Mortgage loan beneficiaries and servicing companies are not 'debt

5    collectors' under the FDCPA.") (quoted citation omitted); see Ligon v. JP Morgan Chase Bank,

6    2011 WL 2550836, *3 (N.D. Cal. 2011) ("[Defendant] is the trustee under the deed of trust, and

7    is thus not considered a debt collector under the FDCPA."); Lal v. Am. Home Servicing, Inc., 680

8    F.Supp.2d 1218, 1224 (E.D. Cal. 2010) ("The law is well settled that FDCPA's definition of debt

9    collector 'does not include the consumer's creditors, a mortgage servicing company, or any

10   assignee of the debt.'") (quoting Perry, 756 F.2d at 1208)); Lara v. Aurora Loan Servs. LLC, 2013

11   WL 1628955, *7 (S.D. Cal. 2013) (same).

12        Second, "foreclosing on [a] property pursuant to a deed of trust is not the collection of a

13   debt within the meaning of the FDCPA[.]"  Izenberg v. ETS Servs., LLC, 589 F.Supp.2d 1193,

14   1199 (C.D. Cal. 2008) (quoted citation omitted) (alteration in original); see Martinez v. Quality Loan

15   Serv. Corp., 2009 WL 586725, *3 (C.D. Cal. 2009) ("Plaintiff asserts that [defendant] is attempting

16   to foreclose unlawfully on his property.  This allegation is not sufficient to establish that [defendant]

17   is a debt collector as defined by the FDCPA."); Garcia v. Am. Home Mortg. Servicing Inc., 2011

18   WL 6141047, *4 (N.D. Cal. 2011) ("non-judicial foreclosure does not constitute 'debt collection' as

19   defined by the [FDCPA]"); Hale v. World Sav. Bank, 2012 WL 4675561, *6 (E.D. Cal. 2012)

20   ("Plaintiffs' claims here arise from and relate to the foreclosure of the Subject Property.  The court

21   thus finds that plaintiffs have not established that any named defendant engaged in 'debt collection

22   practices' under the FDCPA.").

23        In short, plaintiff has failed to allege that any defendants are "debt collectors" or that a

24   non-judicial foreclosure proceeding constitutes the collection of a debt subject to the FDCPA.

25   _____

26   agency theory for the acts of the mortgage company from which it had purchased the loan.  Id. at
     1203.  Ultimately, the Fifth Circuit concluded that, "[t]he legislative history of section 1692a(6)

27   indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage
     servicing company, or an assignee of a debt, as long as the debt was not in default at the time it

28   was assigned."  Id. at 1208.

1   II.    OTHER FEDERAL CLAIMS.

2        In removing the instant case, defendants, in addition to relying on plaintiff's FDCPA claim,

3   contended that removal was proper because the Complaint[4] filed in state court alleged claims

4   under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 & Regulation Z, 12 C.F.R. § 226.19;

5   the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq.; and the Fifth

6   Amendment of the United States Constitution.  (See NOR at 2).

7        A removing defendant bears the burden of establishing that removal is proper.  See Gaus

8   v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) ("The strong presumption against removal

9   jurisdiction means that the defendant always has the burden of establishing that removal is

10  proper.") (internal quotation marks and citations omitted); Abrego Abrego v. The Dow Chemical

11  Co., 443 F.3d 676, 684 (9th Cir. 2006) (per curiam) (noting the "longstanding, near-canonical rule

12  that the burden on removal rests with the removing defendant").  Moreover, any doubt regarding

13  the existence of subject matter  jurisdiction must be resolved in favor of remanding the action to

14  state court.  See Gaus, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt

15  as to the right of removal in the first instance.").

16       A.    TILA Cause of Action.

17       Although plaintiff's Complaint set forth 17 distinct causes of action, including one for

18  violation of her due process rights, (see Complaint at ¶¶ 156-59), the Complaint does not allege

19  a specific claim for violations of TILA or  Regulation Z.  (See, generally, id. at ¶¶ 70-197).  The

20  Complaint merely mentions TILA and Regulation Z  in the "General Factual Allegations" section

21  of the Complaint.  (See id. at ¶¶ 19-69).  Specifically, plaintiff alleges that Countrywide violated the

22  "Truth in Lending Laws" by failing to disclose the terms of the loan to her, not providing her with

23  a notice of rescission, and not having a representative present to discuss the terms of the loan

24  with her.  (See Complaint at ¶ 40).

25

26    [4] "Removal jurisdiction based on a federal question is determined from the complaint as it existed at the time of removal, not as subsequently amended." Downs v. Monetary Mgmt. of Cal.,
27  Inc., 2000 WL 335949, *2 (N.D. Cal. 2000).  A district court may remand an action upon discovering that it lacks subject matter jurisdiction, either by motion or sua sponte.  See Wash v.
28  United Parcel Serv., Inc., 2009 WL 1519894, *1 (C.D. Cal. 2009).

1    Even assuming plaintiff had intended to set forth TILA as a separate cause of action, these
2    allegations are plainly insufficient to state a claim against Countrywide for violation of TILA.  The
3    purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be
4    able to compare more readily the various credit terms available to him and avoid the uninformed
5    use of credit[.]" 15 U.S.C. § 1601(a); see Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559-60,
6    100 S.Ct. 790, 794 (1980) ("Because of their complexity and variety . . . credit transactions defy
7    exhaustive regulation by a single statute.  Congress therefore delegated expansive authority to
8    the Federal Reserve Board to elaborate and expand the legal framework governing commerce in
9    credit.  The Board executed its responsibility by promulgating Regulation Z[.]") (internal citations
10   omitted).  TILA "requires creditors to provide borrowers with clear and accurate disclosures of
11   terms dealing with things like finance charges, annual percentage rates of interest, and the
12   borrower's rights." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, 118 S.Ct. 1408, 1410 (1998).

13   Here, the Complaint does not identify the provisions of TILA that Countrywide allegedly
14   violated.  Indeed, as noted earlier, the Complaint does not even list TILA as a cause of action.
15   The Complaint also does not set forth any specific allegations as to what Countrywide did to
16   violate TILA.  Because plaintiff's vague allegations do not cite any provision of the TILA which
17   Countrywide allegedly violated, and also do not sufficiently allege the conduct by Countrywide
18   which violated TILA, plaintiff's TILA claim fails even under the liberal pleading standard afforded
19   to pro se litigants.  See Levine v. Citibank, 2008 WL 220282, *3 (S.D. Cal. 2008) ("Because
20   Plaintiff's vague allegations do not cite any provision of the [relevant statute] which Defendant
21   allegedly violated, and also do not allege any conduct by Defendant which allegedly violated the
22   [relevant statute], they fail even the liberal pleading standard afforded to pro se plaintiffs.").

23   Finally, even assuming the Complaint stated a valid claim under TILA, the claim is
24   time-barred.  TILA provides that any claim for damages must be brought "within one year from the
25   date of the occurrence of the violation[.]"  15 U.S.C. § 1640(e); see Garcia v. Wachovia Mortg.
26   Corp., 676 F.Supp.2d 895, 905 (C.D. Cal. 2009) (noting, in a case involving a plaintiff's claim for
27   damages under TILA and Regulation Z, that "[c]laims for damages, fees and costs based upon
28   a TILA violation are governed by the one-year statute of limitations period provided by [§ 1640(e)

1  of] TILA.").  Here, the loan was recorded on July 20, 2004.  (See DOT at 1; Complaint at ¶ 19).

2  However, plaintiff did not file the instant action until June 1, 2012, nearly nine years late.[5]  (See

3  Complaint).

4          B.    RESPA Cause of Action.

5          Again, although plaintiff's Complaint set forth 17 distinct causes of action, including one for

6  violation of her due process rights, (see Complaint at ¶¶ 156-59), the Complaint does not allege

7  a RESPA cause of action.  (See, generally, id. at ¶¶ 70-197).  The Complaint merely mentions

8  RESPA in passing in the "General Factual Allegations" section of the Complaint.  (See id. at ¶ 59).

9  Specifically, plaintiff alleges that she sent a "qualified written request" ("QWR") to Bank of America,

10 Countrywide and ReconTrust (collectively, "subject defendants") and that she never received a

11 reply.  (See id.).  Even assuming plaintiff had intended to set forth RESPA as a separate cause

12 of action, these allegations are plainly insufficient to state a claim against the subject defendants.

13         RESPA requires that "[i]f any servicer of a federally related mortgage loan receives a

14 qualified written request from the borrower . . . for information relating to the servicing of such loan,

15 the servicer shall provide a written response acknowledging receipt of the correspondence within

16 5 days . . . unless the action requested is taken within such period."  12 U.S.C. § 2605(e)(1)(A).

17 Among other things, a QWR must include a "statement of the reasons for the belief of the

18 borrower, to the extent applicable, that the account is in error or provides sufficient detail to the

19 servicer regarding other information sought by the borrower."  Id. at § 2605(e)(1)(B)(ii).  When a

20 _____

21       [5]  Further, any claim premised on TILA's rescission provisions, which require a person to file
   a rescission suit no later than three years after consummation of the loan, see 15 U.S.C. § 1635(f);
22 12 C.F.R. § 226.23(a)(3), would also be time-barred.  See Beach, 523 U.S. at 419, 118 S.Ct. at
   1413 (1998) ("[TILA] permits no federal right to rescind, defensively or otherwise, after the 3-year
23 period of § 1635(f) has run."); McOmie-Gray v. Bank of Am. Home Loans, 667 F.3d 1325, 1328
   (9th Cir. 2012) ("[U]nder the case law of this court and the Supreme Court, rescission suits must
24 be brought within three years from the consummation of the loan, regardless whether notice of
   rescission is delivered within that three year period."); Miguel v. Country Funding Corp., 309 F.3d
25 1161, 1164-65 (9th Cir. 2002), cert. denied, 539 U.S. 927, 123 S.Ct. 2577 (2003) ("[W]e previously
   have held that section 1635(f) represents an absolute limitation on rescission actions which bars
26 any claims filed more than three years after the consummation of the transaction.  Therefore, §
   1635(f) is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635
27 claim is brought outside the three year limitation period.") (internal quotation marks and citation
   omitted).
28

                                        10

loan servicer receives a QWR, it must either make the appropriate corrections in the borrower's account or, after conducting an investigation, provide the borrower with a written explanation of: (1) why the servicer believes the account is correct; or (2) why the requested information is unavailable or cannot be obtained by the servicer.  See id. at § 2605(e)(2).

Here, plaintiff's allegations, (see Complaint at ¶ 59), are insufficient to demonstrate that she sent a proper QWR to the subject defendants.  Plaintiff did not include a copy of the QWR, and there is no indication on the face of the Complaint that plaintiff's QWR included any of the information required by § 2605(e).  Also, although plaintiff references "section 2605(e)," (see Complaint at ¶ 59), plaintiff does not – again, assuming plaintiff had set forth a separate RESPA claim – identify the provisions of RESPA that the subject defendants allegedly violated.  Neither the court nor the subject defendants should be required to guess as to the manner in which the subject defendants' conduct allegedly violated RESPA.  See Associated Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526, 103 S.Ct. 897, 902 (1983) (in deciding a motion to dismiss, a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged") (footnote omitted); Levine, 2008 WL 220282, at *3 (S.D. Cal. 2008).  In short, plaintiff's conclusory allegations are insufficient to state a claim under RESPA.  See Lemperle v. Washington Mut. Bank, 2011 WL 197590, *2 (S.D. Cal. 2011) (dismissing as factually insufficient a RESPA claim which offered "no factual basis for [plaintiff's] claim, merely reciting the elements of the cause of action and the general required content of a QWR"); Lopez v. U.S. Bank Nat. Ass'n, 2010 WL 3463622, *2 (S.D. Cal. 2010) (noting that plaintiff "does not allege when she sent the QWR, to whom, or what she asked for, and for these reasons fails to state a claim under RESPA").

C.    Due Process Cause of Action.

Plaintiff alleges that the Home Affordable Modification Program ("HAMP") "is an entitlement program such that its benefits cannot be administered arbitrarily or without procedural due process."  (See Complaint at ¶ 158).  According to plaintiff, "Defendants are required to have promulgated regulations, guidelines or rules that require servicers of Defendants' mortgage loans

or participants in the HAMP to provide a written notice stating the reason for denial and showing proper application of the 'loss mitigation waterfall' and Net Present Value determination as well as the procedure to appeal an adverse decision."  (See id. at ¶ 159).

Title 42 U.S.C. § 1983[6] provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"  To sustain an action under this statute, a plaintiff must establish two essential elements:  "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived [] plaintiff of a federal constitutional or statutory right." Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989), cert. denied, 498 U.S. 938 (1990); see Patel v. Kent School Dist., 648 F.3d 965, 971 (9th Cir. 2011) (same).

Here,  plaintiff does not specify which defendants were state actors for purposes of her due process claim.  (See, generally, Complaint at ¶¶ 156-59).  In any event, it is clear that plaintiff's due process claim is insufficient because none of the named defendants are state actors for

---

[6]  Section 1983 does not create or establish any federally protected state right.  Instead, it creates a cause of action for plaintiffs to enforce federal rights created elsewhere.  See Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994); City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 2432 (1985) (Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.").  In addition, § 1983 provides the exclusive available federal remedy for violations of federal constitutional rights – such as plaintiff's due process claim – under color of state law.  In other words, plaintiff may not assert a claim directly under the Constitution.  See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735, 109 S.Ct. 2702, 2723 (1989) ("[T]he Fourteenth Amendment was intended in large part to embody and expand the protections of the 1866 [Civil Rights] Act as against state actors," and this logic "applies with equal force to petitioner's invitation to this Court to create a damages remedy broader than § 1983 from the declaration of rights now found in [42 U.S.C.] § 1981.  We hold that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."); Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992), cert. denied, 506 U.S. 1081 (1993) ("[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.").

purposes of establishing the necessary state action. See, e.g., Valero v. Bank of America Home Loans, 2012 WL 6013495, *3 (E.D. Cal. 2012) (noting, in an action against Bank of America Home Loans, Bank of New York Mellon and ReconTrust Company, NA, that "nothing alleged in the amended complaint demonstrates any conduct by defendants that shows state action in violation of plaintiffs' due process rights nor suggests that an amendment to the allegations could establish such state action in violation of plaintiffs' federally protected rights"); Neal v. E-Trade Bank, 2011 WL 3813158, *3-4 (E.D. Cal. 2011) (dismissing plaintiffs' due process claim alleging that MERS and a number of other defendants were "liable as state actors because their particular actions [we]re 'inextricably intertwined' with those of the government in the administration of HAMP" because the claim fell short of permitting the inference of a connection between the private defendants and a government agency or official "such that the private actions would constitute state action"); Hoffman v. Indymac Bank FSB, 2010 WL 3463641, *3 (N.D. Cal. 2010) (dismissing the plaintiff's due process cause of action because "[s]ection 1983 is applicable only to 'state action,'" and the "plaintiff fails to allege facts to support a finding that any defendant [including the original lender, the original trustee, and MERS] has acted in concert with a state actor or has otherwise engaged in state action"); Williams v. Bank of America, 2013 WL 1907529, *4-5 (E.D. Cal. 2013) ("A private remedy such as non judicial foreclosure does not involve state action to invoke a section 1983 claim. . . . As private actors, defendants [including, Bank of America, NA and Countrywide Home Loans Inc.] are not subject to plaintiff's Section 1983 claim[.]"); Laughlin v. Bank of America, 2012 WL 911517, *1 (D. Nev. 2012) ("The [Bank of America] Defendants in this case have not been shown to be state actors. They are a national banking association and two of its employees. The mere fact that national banking associates are regulated by the Federal government does not make them subject to civil rights actions.") (internal quotation marks and citation omitted); Quimby v. Bank of America, 2009 WL 3517984, *1 (D. Or. 2009) ("Plaintiff contends that because the federal government regulates, insures, and invests in Bank of America, the company is subject to 42 U.S.C. § 1983. However, the Supreme Court has decided that a private agency's actions are not state actions even if the agency is a recipient of public funds and

is heavily regulated by the state.   Furthermore, courts have decided that banks do not presumptively act under the color of state law.") (internal citations omitted).

IV.     THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, the power to exercise supplemental jurisdiction is within the court's discretion.  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.").  The court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3); see Gibbs, 383 U.S. at 726,  86 S.Ct. at 1139 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7 (1988)).  Unless the court is persuaded by "considerations of judicial economy, convenience and fairness to litigants" it must "hesitate to exercise jurisdiction over state claims[.]"  Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139.

Here, as noted above, the court is dismissing plaintiff's FDCPA claim.  With respect to plaintiff's TILA (and Regulation Z) and RESPA claims, the Complaint upon which removal was based does not contain any separate claims for such causes of action.  Even assuming it did, the claims are insufficient to state a claim.  Finally, with respect to plaintiff's due process claim, the claim is plainly insufficient as there is no way plaintiff can allege the necessary state action to establish such a claim.  Also, when the court granted defendants' motion to dismiss and dismissed

the Complaint with leave to amend, (see Court's Order of January 25, 2013, at 1-2) plaintiff omitted the due process claim from her FAC.  (See, generally, FAC).  In short, there are no federal claims remaining in the instant action.

Under the circumstances, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims and hereby remands those claims back to the state court. See, e.g., Downs, 2000 WL 335949, at *2 (noting that where federal claims have been omitted post-removal, "the court has discretion whether to continue to exercise its jurisdiction [and] [i]t may choose either to dismiss the state law claims or remand the action to state court"); Ligon, 2011 WL 2550836, at *4 (dismissing FDCPA claim and remanding remaining state claims); Eng v. Washington Mutual Bank, 2009 WL 2591359, *2-3 (N.D. Cal. 2009) (dismissing TILA claim and remanding remaining state law claims); Arceo v. County of San Mateo, 2011 WL 92073, *1-2 (N.D. Cal. 2011) (remanding plaintiff's state law claims after a prior court order, which granted defendant's motion to dismiss with respect to plaintiff's federal constitutional claims, prompted the court to examine its subject matter jurisdiction); Sufi v. Leadership High School, 2013 WL 3339441, *9 (N.D. Cal. 2013) (granting defendant's motion to dismiss plaintiff's First Amendment retaliation claim, brought pursuant to 42 U.S.C. § 1983, and remanding her remaining state law claims).

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss **(Document No. 32)** is **granted-in-part and denied in part**.  Plaintiff's claim under the FDCPA is **dismissed with prejudice**.  There is no other federal claim stated in the First Amended Complaint.  To the extent the First Amended Complaint can be read to contain a claim under TILA or RESPA, those claims are dismissed without prejudice.

2. Plaintiff's remaining state law claims are **remanded** to the Los Angeles County Superior Court, 111 N. Hill Street, Los Angeles, CA 90012.

3. Judgment shall be entered accordingly.

    4.  The Clerk shall send a certified copy of this Order and the Judgment to the state court.

Dated this <u>22nd</u> day of October, 2013.


                                                    _____/s/_____
                                                    Fernando M. Olguin
                                                    United States District Judge